738 So.2d 415 (1999)
Gregg RICHARDS, Appellant,
v.
STATE of Florida, Appellee.
No. 97-01822.
District Court of Appeal of Florida, Second District.
July 2, 1999.
Rehearing Denied August 10, 1999.
*416 James Marion Moorman, Public Defender, Bartow, and Megan Olson, Assistant Public Defender, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Acting Chief Judge.
Gregg Richards appeals his conviction for capital sexual battery based upon a charge that he digitally penetrated the vagina of a four-year-old girl. We reverse because under the particular circumstances of this case, Mr. Richards was entitled to an instruction clarifying the definition of vagina. Although this case is factually distinguishable, we disagree with the analysis in State v. Pate, 656 So.2d 1323 (Fla. 5th DCA 1995), and Bowden v. State, 642 So.2d 769 (Fla. 1st DCA 1994), which essentially equates the statutory term "vaginal" with "sexual organ." Under our current statute, sexual battery can occur when the defendant's mouth has "union" with the victim's "sexual organ," but the defendant's finger must actually "penetrate" the vagina. If the defendant's finger does not penetrate the vagina, but only touches the vulva, the crime would appear to be a lewd and lascivious act.[1] Given that the crime of lewd and lascivious is a second-degree felony that can result in a sentence no longer than fifteen years' imprisonment, and capital sexual battery results in a sentence of lifetime incarceration, the jury should not be misled about the critical issue of anatomy.

I. THE FACTS
Mr. Richards was the boyfriend of the child's mother. In November 1991, he allegedly penetrated the girl's vagina with his finger on one occasion. This occurred while he was alone with the child watching television. Although the victim was interviewed at the time of the alleged offense, an information was not filed until February 1996. The State charged Mr. Richards with one count of capital sexual battery on a child less than twelve years of age in violation of section 794.011(2), Florida Statutes (1991). Oddly, the information contains language in addition to the statutory offense, alleging that he had committed the act "in a lewd, lascivious or indecent manner."[2] The trial occurred in March 1997, and the jury returned a verdict of guilty as charged.
The evidence in this case, like that in many other sexual battery cases, involves little or no physical evidence of a crime and critical testimony from a small child who does not understand the nuances of anatomy. When interviewed in 1991, she claimed that Mr. Richards touched her "monkey." This was a term that her mother had taught her to describe her general "female area." A physician who examined her in 1991 found no evidence of damage to her hymen, but found redness and a swollen area on the inner aspect of the child's labia majora. His investigation neither established nor ruled out digital penetration of the vagina.
At the trial in 1997, the prosecutor and the State's examining physician used the phrase "vaginal area" during the State's case. The assistant state attorney asked *417 whether the doctor had found evidence that the girl's "vaginal area" had been touched. The defense objected and attempted to require the doctor to testify using a distinction between the vagina and the vulva. By the end of the doctor's testimony, the distinction was quite muddled. Finally, the doctor testified:
Okay. The medical definition usually refers to the opening of the canal itself and its extension back up to the cervix and the uterus. General terms, when the vagina or vaginal area is referred to, it's generally accepted, I believe, that it includes the labia majora, the labia minora, the clitoris, the urethra, the hymen, the tissues that surround and encompass the opening to the canal itself.
The defense objected to this testimony because it intermingled the relevant definition of vagina with other portions of the anatomy. The court overruled the objection and added that counsel could address the issue on re-cross.
At the conclusion of the case, the defense requested an instruction that provided an accurate definition of vagina and distinguished between the vulva and the vagina. This proposed written instruction was denied.
Exacerbating this problem, during closing arguments, the State belittled the defense's efforts to draw a distinction between the vagina and the vulva. When the defense attorney tried to explain to the jury that they must find that the defendant placed his finger inside the vagina and not merely the vaginal area, the prosecutor objected that this was a "misquote" of the law. The trial court did not rule on this objection but told the jury that it would instruct them on the law. In the State's rebuttal, the prosecutor argued:
The defense wants you to rely on this medical definition. All these charts and these graphs, what do you think? Why do you think he wants you to rely on that? What's his defense, folks? [objection made and overruled at this point] Folks, think about what the defense is. Their defense is not even consistent with logic. If you heard him, he says, first you've got to not believe the victim.... Then he says, well, if he did it, if he did it, I want you to rely on this medical definition. I want you, folks, to ignore common sense of what a vagina is. And I want you to rely on this medical definition. Because it's going to make it harder to prove penetration
. . . .
The jury returned a verdict as charged, and Mr. Richards appealed his conviction and life sentence to this court.

II. THE LAW
As defined by statute, "[t]he term `sexual battery' means oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual battery does not include an act done for a bona fide medical purpose." § 794.011(1)(h), Fla. Stat. (1991). This antiseptic definition intermingles numerous prohibited acts, and it is often necessary to parse the definition to determine whether an offense has been committed. The confusion is exacerbated because the word "sexual organ" in the statute can mean either the victim's or the defendant's sexual organ, depending on the conduct alleged. Because it is often difficult to understand exactly what types of conduct this statute proscribes, it is useful to divide this offense into four parts, and to translate its terms into more active language. See Dorch v. State, 458 So.2d 357, 358 (Fla. 1st DCA 1984).
The statute prohibits:
(1) "Oral, anal, or vaginal penetration by the sexual organ of another." Translation: It is illegal for a man to place his penis inside the mouth, anus, or vagina of a victim.
(2) "Oral, anal, or vaginal union with the sexual organ of [the defendant]." Translation: It is illegal for a man to touch the *418 mouth, anus or vagina of the victim with his penis, and it is illegal for a woman to touch the mouth, anus or vagina of the victim with her "sexual organ."
(3) "Oral, anal, or vaginal union with the sexual organ of [the victim]." Translation: It is illegal for a man to touch the sexual organ of the victim with his mouth or anus, and it is illegal for a woman to touch the sexual organ of the victim with her mouth, anus, or vagina.
(4) "The anal or vaginal penetration of another by any other object." Translation: It is illegal for a man or a woman to place any object inside the anus or vagina of the victim.
Dividing the statute in this manner demonstrates at least four significant points. First, the crime described in paragraph (1) appears unnecessary because it entirely duplicates the male crime described in paragraph (2). One simply cannot penetrate any of these bodily orifices without first making union with them. This duplication has probably led to some confusing reasoning within the case law. See, e.g., Pate, 656 So.2d 1323; Bowden, 642 So.2d 769.
Second, the term "union" and the term "penetration" are used with some precision. Union permits a conviction based on contact with the relevant portion of anatomy, whereas penetration requires some entry into the relevant part, however slight. For cases concerning union, see Stone v. State, 547 So.2d 657 (Fla. 2d DCA 1989), and Dorch v. State, 458 So.2d 357 (Fla.1984). For cases concerning penetration, see Ready v. State, 636 So.2d 67 (Fla. 2d DCA 1994), and Davis v. State, 569 So.2d 1317 (Fla. 1st DCA 1990).
Third, it is clear that a defendant's finger is an "other object," which must penetrate and not merely have union with the relevant part. See Stone, 547 So.2d 657; Dorch, 458 So.2d 357.
Fourth, "vaginal" and "sexual organ" are not equivalent terms. We agree with the Fourth District's discussion of legislative intent in Firkey v. State, 557 So.2d 582 (Fla. 4th DCA 1989), disapproved in part on other grounds, Wilson v. State, 635 So.2d 16 (Fla.1994). In the process of amending these statutes in the early 1970s, the legislature chose to use an accurate definition of vagina, and used sexual organ as a more generic term comparable to "private part."
In Pate, 656 So.2d 1323, the Fifth District refused to adopt a "technical, medical definition" of the term "vagina" in a case involving union between the defendant's mouth and the victim's sexual organ. In that case, a doctor was allowed to testify in terms similar to those used in this case. However, the problem in Pate is that the court's analysis was misdirected by the unnecessary use of the term "vagina" in the information. In Pate, the State merely needed to prove that the defendant's mouth made union with the victim's sexual organ. It was entirely appropriate for a doctor to define "sexual organ" to include the vulva. Thus, the court in Pate appears to have reached the right result for the wrong reason.
Likewise, in Bowden, 642 So.2d 769, the State charged that the defendant had committed capital sexual battery by "union with [the defendant's] penis and the child's vagina." The court reasoned:
It has further been observed, that:
The legislature kept the "private parts" concept of rape by specifying that sexual battery occurs upon "vaginal penetration by, or a union with, the sexual organ of another." The phrase "union with" continues the concept that "any penetration by a male's private organ of any part of a female's private parts also constitutes a crime." Firkey v. State, 557 So.2d 582, 585 (Fla. 4th DCA 1989).
The foregoing observations indicate that although the term "vagina," may have a very definite medical meaning, the word as used in the statute is a term of art, which connotes "a female's private parts." Thus, where the male *419 offender is charged with committing sexual battery by penile union or penetration, the statute is broad enough to contain within its prohibition penetration or union with the female victim's sexual organ. The sexual battery by an object other than the male organ, however, "occurs only if the victim's vagina is penetrated." Firkey, 557 So.2d at 585....
Bowden, 642 So.2d at 771 (emphasis omitted).
We disagree with this analysis in Bowden. According to Bowden, the term "vaginal" has a narrow definition when "other object" penetration is involved and a "private parts" definition when penile union or penetration is involved. It is true that a man penetrates the vulva, and thus the sexual organ, in the process of making union with the vagina, but the statute unambiguously requires at least union with the vagina. Penetration of the vulva without union with the vagina simply is not defined as sexual battery when anything other than the defendant's mouth is used.
We also disagree that there is both a technical definition of vagina and some separate "term of art" that permits the law to expand the well-recognized medical definition to include the entire female sexual organ. We have found no such expanded definition even in common dictionaries. Webster's New World College Dictionary, for example, defines vagina as: "in female mammals, the canal between the vulva and the uterus." See Webster's New World College Dictionary, 1472 (3d ed.1996).
We do not agree with the conclusion in Pate that to adopt what it describes as the medical definition of vagina means there could never be union with the vagina without penetration. To the contrary, evidence showing a defendant made penile contact with the victim's hymen or with the end of the canal in the absence of a hymen would be sufficient to establish union with the vagina. Moreover, Pate cites Pineiro v. State, 615 So.2d 801 (Fla. 3d DCA 1993), and Stone, 547 So.2d 657, for the proposition that a defendant placing his tongue or mouth on, as opposed to in, the victim's vagina constitutes union with the vagina. While that may be true, it is important to note that under the statute as it is written, a man can be convicted of sexual battery for placing his mouth or tongue in contact with a female's "sexual organ," a term encompassing more than the term vagina. While the difference between union and penetration of the vagina may only be a millimeter or two apart, it is a distinction the legislature has chosen to make in "other object" sexual battery cases and a distinction we must follow.[3]
The law is well settled that criminal statutes must be strictly construed. "When the language is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (1991). Thus, even if we were to concede that two definitions of vagina exist, in a statute that uses both "sexual organ" and "vaginal," we would be constrained to use the narrower, Webster's definition of vagina.
Although we conclude that the evidence in this case was sufficient for resolution by the jury,[4]see Stone, 547 So.2d 657, we must reverse because the confusion created concerning the definition of vagina may have misled the jury into believing that penetration of the vaginal area was sufficient to convict Mr. Richards. The combination of the doctor's testimony and the State's closing argument served to create a reasonable probability that the jury could have been confused or misled in the absence *420 of the requested instruction. See Harvey v. State, 448 So.2d 578 (Fla. 5th DCA 1984); Carter v. State, 469 So.2d 194 (Fla. 2d DCA 1985); Ruiz v. Cold Storage & Insulation Contractors, Inc., 306 So.2d 153 (Fla. 2d DCA 1975). We emphasize that we are not holding that an instruction defining vagina is required in every digital penetration case. It was necessary in this case because of the confusion created by the State during the trial. We decline to reach the remaining issues because they may not reoccur during any new trial.
Reversed and remanded for new trial.
GREEN and SALCINES, JJ., Concur.
NOTES
[1] See § 800.04(1), Fla. Stat. (1991).
[2] The offense of lewd and lascivious acts is not a necessarily included offense within the offense of capital sexual battery. See State v. Hightower, 509 So.2d 1078 (Fla.1987). Because of our resolution of this case, we do not need to determine whether the surplus language in this information transformed the offense of lewd and lascivious act into a lesser offense of the charged offense.
[3] If the legislature truly wishes to make penile contact with the vulva or clitoris punishable by life imprisonment without the possibility of parole, it need only add the word "penile" to the phrase "oral, anal or vaginal" in section 794.011(1)(h), Florida Statutes (1991).
[4] Fortunately, from the State's perspective, Mr. Richards made statements to the police in the nature of a confession. Thus, there is no question that the evidence in this case was sufficient for jury resolution.